UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

J & J SPORTS PRODUCTIONS, INC.,

                Plaintiff,

                                         **ORDER**
                v.                               14-CV-03642 (PKC)

EL COYOTE CARPAU INC.
d/b/a EL COYOTE RESTARAUNT
and CARLOS AXILOTE

                Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiff commenced this action on June 10, 2014. (Dkt. 1.) Plaintiff's complaint asserts claims for violations of Section 705 of the Federal Communications Act of 1934 ("FCA"), as amended, 47 U.S.C. §§ 605 and 553, based on Defendants' allegedly willful, unauthorized publication of a closed-circuit telecast distributed by Plaintiff. (Dkt. 1.) Plaintiff executed summonses which were served upon each Defendant on June 21, 2014 and June 26, 2014, respectively. (Dkts. 4–6.) Defendants have not appeared in this action to answer the complaint, and the time for answering has expired. The Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("FRCP") on August 22, 2014. (Dkt. 8.) Plaintiff moved for a default judgment pursuant to FRCP 55(b) on August 26, 2014 to which Defendants have not responded. (Dkts. 9–11.)

      For the reasons set forth below, it is ordered that Plaintiff be awarded $2,307.90 in statutory damages, $2,307.90 in enhanced damages, and $520 in reimbursement costs, for a total award of $5,135.80.

*BACKGROUND*

In the Complaint, Plaintiff alleges that it purchased the exclusive rights to commercially distribute the June 9, 2012 WBO Welterweight Championship Fight Program ("Event"), at closed-circuit locations such as theaters, arenas, bars, and restaurants throughout New York State. (Hooten June Aff.[1] ¶ 7).[2] A commercial establishment could receive and broadcast the Event only after entering into a contractual agreement with Plaintiff, which required each establishment to pay Plaintiff a commercial sublicense fee. (Gagliardi Aff.[3] ¶ 8.) The amount of the fee was determined based on the capacity of the establishment. (*Id.*) Relevant to this case, the commercial sublicense fee for an establishment with a maximum fire code occupancy of 55 persons would have been $2,200. (*Id.*)

The transmission of the Event was electronically coded. Once a commercial establishment was authorized by Plaintiff to receive the Event, it was provided with the electronic decoding equipment and satellite coordinates necessary to receive the signal. (Hooten June Aff. ¶ 13.) Plaintiff contends that signals cannot be accidentally intercepted. (Gagliardi Aff. ¶ 9.)

El Coyote Carpau Inc, d/b/a/ El Coyote restaurant ("El Coyote"), is a commercial establishment, located at 80-18 Northern Blvd., Jackson Heights, New York. (Hooten June Aff. ¶ 5.) During the relevant time frame, Defendant Carlos Axilote was an officer, director,

---

[1] Citations to "Hooten June Aff." refer to Plaintiff counsel's Affidavit attached to the Complaint, dated June 10, 2014. (Dkt. 1.)

[2] On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997).

[3] Citations to "Gagliardi Aff." refer to Plaintiff's Affidavit attached to the Memorandum of Law in Support of Request for Default Judgment, dated August 26, 2014, and signed by Joseph Gagliardi, President of J & J Sports Productions, Inc. (Dkt. 11-2.)

shareholder, and/or principal of El Coyote, and possessed both the right and ability to oversee the infringing activities alleged in the Complaint. (*Id.*) Axilote is listed as the principal on the liquor license obtained by El Coyote from the New York State Liquor Authority, and thus "had a direct financial gain in the infringing activities that took place at the Defendants' Establishment." (*Id.*)

On June 12, 2012, at approximately 12:30 AM, Michael Osgood, an investigator for Plaintiff, entered El Coyote, and observed Defendants broadcasting the Event to patrons of El Coyote. (Osgood Aff.[4]) Although Osgood was not charged a cover charge, he observed three televisions and approximately 42 patrons in the restaurant watching the Event. (*Id.*)

Plaintiff asserts that because Defendants broadcast the Event without contracting with Plaintiff for the right to do so, and without paying Plaintiff the required commercial sublicense fee, they willfully intercepted and/or received transmission of the Event, in violation of 47 U.S.C. §§ 605 and 553. (Hooten June Aff. ¶¶ 1, 14.)

*DISCUSSION*

I. <u>Applicable Law</u>

 A. <u>Legal Standards for Default Judgment</u>

FRCP 55 establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FRCP 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the

---

[4] "Osgood Aff." refers to the Affidavit of Michael Osgood, attached as "Exhibit A" to Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, dated August 26, 2014. (Dkt. 10-2.)

3

Court may, on a plaintiff's motion, enter a default judgment. FRCP 55(b)(2). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Comm. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing *Erwin DeMartino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations [in the plaintiff's pleadings], accepted as true, provide a proper basis for liability and relief." *RollsRoyce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 108 (the court "deems all the well-pleaded allegations in the pleadings to be admitted" for purposes of deciding a default judgment motion). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls–Royce PLC*, 688 F. Supp. 2d at 153 (citation omitted).

B. 47 U.S.C. §§ 553(a) and 605(a)

Plaintiff alleges that Defendants violated 47 U.S.C. §§ 553(a) and 605(a) through the illegal interception of Plaintiff's broadcast. However, a court is not permitted to grant damages under both statutes for a single illegal transmission. *See Int'l Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1008–09 (2d Cir. 1993). The Second Circuit has stated that where the defendants are found to have violated both statutes, the court should only award damages pursuant to Section 605. *Id.; see also Garden City Boxing Club, Inc. v. Polanco,* 05 CV 3411, 2006 WL 305458, at *5

(S.D.N.Y. Feb. 7, 2006), *aff'd,* 228 F. App'x 29, 30 (2d Cir. 2007). Plaintiff has sufficiently stated a claim against Defendants for a violation of Section 605, and accordingly, the Court will consider Plaintiff's request for damages under Section 605, not Section 553.

          C. <u>Plaintiff is Entitled to Statutory Damages Under Section 605</u>

Plaintiff has established the elements of liability under Section 605(a), which states, "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a). This section has been held to apply to the interception of cable communications originating as a satellite transmission. *See Int'l Cablevision, Inc. v. Sykes,* 75 F.3d 123, 131–32 (2d Cir. 1996). Here, Defendants' alleged conduct—the unauthorized interception, receipt, and broadcast of the Event—violates Section 605(a).

Section 605 provides for penalties "for *each* violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). Although Section 605 requires the court to assess damages based on each "violation" of the statute, there is no statutory definition of "violation." *See Garden City Boxing Club, Inc. v. Rosado,* 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005) (*"Rosado"*). However, most cases applying this statute in a commercial context have construed the broadcast of a single event on one night as one violation. *See, e.g., id.*; *Time Warner Cable of New York City v. Taco Rapido Rest.,* 988 F.Supp. 107, 111 (E.D.N.Y. 1997) (*"Taco Rapido"*).

Section 605 provides the Court with discretion to determine the amount of statutory damages within the range of $1,000 to $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). Courts have

implemented different methods for calculating damage awards.[5] "When there is uncontradicted evidence of the number of patrons viewing an unauthorized program in an establishment, courts have calculated the award of damages by multiplying the individual residential rate to receive the transmission by the number of patrons present, and adding to this any other cover charges and profits that can be attributed to the unauthorized viewing." *J & J Sports Prods., Inc. v. Morleys Tavern Inc.*, 13 CV 5211, 2014 WL 4065096 (E.D.N.Y. May 9, 2014) *report and recommendation adopted,* 13 CV 5211, 2014 WL 4075162 (E.D.N.Y. Aug. 15, 2014) ("*Morleys Tavern Inc.*"); s*ee, e.g., Rosado*, 2005 WL 3018704, at *3–4 (multiplying the number of patrons attending the illegal broadcast by the residential charge for the pay-per-view event being shown, $54.95); *J & J Sports Prods., Inc. v. LDG Williams, LLC,* 11 CV 2145, 2011 WL 5402031, at *3 (E.D.N.Y. Nov. 7, 2011) (*"LDG Williams, LLC"*); *see also J & J Sports Prods., Inc. v. Arhin,* 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. April 17, 2009). Here, multiplying the residential charge for the Event ($54.95) by the number of patrons in Defendants' bar during the unlawful broadcast (42) results in a damage award of $2,307.90.

Plaintiff, however, alleges lost revenues in this case of $2,200, based on the fee that would normally be charged to a commercial establishment with a capacity of 42 patrons. (Gagliardi Aff. ¶ 8.) Because the per-patron calculation results in a damages award larger than the fee that Defendants would have had to pay, as a commercial establishment, the Court finds that the recommended statutory damages is sufficient to compensate Plaintiff and deter future illegal conduct on the part of Defendants.

---

[5] In calculating profits, other courts have awarded a flat damage amount, but this is generally the case when the plaintiff did not submit evidence to support a specific claim for damages. *See Kingvision Pay–Per–View Ltd. v. Rodriguez,* 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where the plaintiff did not submit evidence of the cost of the license fee for the defendants to broadcast the boxing event legally).

### D. Plaintiff is Entitled to Enhanced Damages Under Section 605

Plaintiff also seeks enhanced statutory damages pursuant to Sections 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), providing for additional awards of up to a maximum of $100,000 for all willful violations. The statute permits enhanced damages where the violation was committed willfully and for the purpose of private financial gain. *See, e.g., Taco Rapido,* 988 F.Supp. at 111–12 (awarding the plaintiff statutory damages of $3,750, plus an additional $5,000 in enhanced damages, where the defendant broadcast a boxing match to 95 people at his restaurant); *Joe Hand Promotions, Inc. v. Soviero,* 11 CV 1215, 2012 WL 3779224, at *13 (E.D.N.Y. July 31, 2012) *report and recommendation adopted*, 11-CV-1215, 2012 WL 3779221 (E.D.N.Y. Aug. 30, 2012) (awarding the plaintiff statutory damages of $1,000, plus an additional $5,000 in enhanced damages, where the defendant broadcast a boxing match at a bar in front of approximately 18 patrons).

Here, Plaintiff's well-pleaded allegations support the imposition of enhanced damages under Section 605(e)(3)(C)(ii). Willful behavior under the statute has been interpreted to include "disregard for the governing statute and an indifference for its requirements." *TransWorld Airlines, Inc. v. Thurston,* 469 U.S. 111, 127 (1985). It is clear that Defendants willfully and unlawfully intercepted and broadcast the Event without entering into a licensing agreement with Plaintiff. In order to broadcast the Event, Defendants must have consciously and deliberately engaged in some form of unlawful and willful conduct: using an unauthorized decoder, illegally transferring an authorized decoder to the location, or illegally altering cable service to bring the signal to Defendants' establishment. (Gagliardi Aff. ¶ 9.)

Plaintiff alleges that, as a result of Defendants' Section 605 violation, Plaintiff has suffered intangible losses in the form of business investment, business opportunities, reputation,

7

and goodwill, in the amount of $2,000. (Dkt. 11, Memorandum in Support of Default Judgment, at 13). Given the willful nature of the violation, the Court concludes that Plaintiff should be awarded enhanced damages, in addition to statutory damages, under Section 605.

Plaintiff is, therefore, awarded statutory damages of $2,307.90, plus an additional $2,307.90 in enhanced damages, for a total damage award of $4,615.80. This award is consistent with others made in this district in cases involving the illegal interception of satellite transmissions by private commercial establishments. *See, e.g., Morleys Tavern Inc.*, 2014 WL 4065096, at *1 (awarding statutory damages of $3,897.00 and enhanced damages of the same); *LDG Williams, LLC,* 2011 WL 5402031, at *5 (awarding statutory damages of $2,534.15 and enhanced damages of the same); *Entm't by J & J, Inc. v. Friends II, Inc.,* 2 CV 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (awarding statutory damages of $2,500 and enhanced damages of the same).

### E. Prejudgment Interest

Plaintiff also requests an award of prejudgment interest. (Hooten Aug. Aff.[6] ¶ 4.) Section 605 does not provide a statutory basis for such an award of interest. *See Morleys Tavern Inc.*, 2014 WL 4065096, at * 11. However, "[t]he Second Circuit has recognized that prejudgment interest may be permitted in the absence of express statutory authorization 'when the awards were fair, equitable and necessary to compensate the wronged party fully.'" *Garden City Boxing Club, Inc. v. Rojas,* 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (*"Rojas"*) (quoting *Wickham Contracting Co., Inc. v. Local Union No. 3,* 955 F.2d 831, 836 (2d Cir. 1992)).

---

[6] Citations to "Hooten Aug. Aff." refer to Plaintiff's Attorney's Affidavit attached to Plaintiff's Request to Enter Default Judgment, dated August 26, 2014. (Dkt. 9.)

Because Plaintiff is receiving enhanced damages in addition to statutory damages, the Court finds that Plaintiff has been fully compensated for the wrong committed against it by Defendant and that an award of prejudgment interest is thus unnecessary. *Rojas,* 2006 WL 3388654, at *9. Indeed, Plaintiff has provided no reason for awarding prejudgment interest in this situation, *i.e.*, where Plaintiff is receiving an enhanced damages award equal, and in addition, to the amount of statutory damages being awarded. That Plaintiff waited almost two years before filing suit further militates against an assessment of prejudgment interest. Accordingly, Plaintiff's request for prejudgment interest is denied.

F. Plaintiff's Attorneys' Fees and Costs

Under Section 605(e)(3)(B)(iii), Plaintiff is also entitled to costs and reasonable attorneys' fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). Here, Plaintiff does not seek an award of attorneys' fees, but requests reimbursement of $520 in costs and disbursements from Defendants. (Hooten Aug. Aff. ¶ 4.)

Based on the supporting affidavits, the Court finds that the $520 requested as reimbursement for the costs of service of process and filing fees to be reasonable, and therefore, orders that Plaintiff be awarded $520 in total litigation costs from Defendant.

*CONCLUSION*

Accordingly, for the reasons stated above, it is ordered that Plaintiff be awarded $2,307.90 in statutory damages, $2,307.90 in enhanced damages, and $520 in reimbursements costs, for a total award of $5,135.80. The Clerk of the Court is respectfully requested to terminate this case.

SO ORDERED:

　　/s/ Pamela K. Chen　　
PAMELA K. CHEN
United States District Judge

Dated: October 14, 2014
　　　　Brooklyn, New York